*25
 
 Dye, J.
 

 In this discovery proceeding, pursuant to section 1377-b of the Civil Practice Act, the committee for an incompetent seeks to recover moneys representing the proceeds of two bank accounts which, allegedly, are being wrongfully withheld by the respondent herein.
 

 It is undisputed that on June 27, 1957 the incompetent’s husband, Hija Krimer, used his personal funds to open two accounts in the Harlem Savings Bank, one in the name of ‘1 Anna Krimer or Hija Krimer, payable to either or the survivor ” with a deposit of $20,000. In this connection both husband and wife executed signature cards and a joint account agreement on a bank form. At the same time another account was opened by the husband with a deposit of $5,000 viz.: “Hija Krimer in trust for Anna Krimer ”. No withdrawals or further deposits were ever made in either account except for periodic crediting of interest until March 4, 1959, when the husband appeared at the bank accompanied by the respondent William Krimer, and executed a withdrawal slip closing the joint survivorship account, and with the proceeds amounting to $21,002.04 opened a new account in the same bank viz.: “ Hija Krimer or William D. Krimer, payable to either or the survivor ’ ’. On May 4,1959 the husband again appeared at the savings bank accompanied by his son, William, and closed the account standing in his name as trustee for Anna. The bank issued its check to his order in the amount of $5,293.10, being the whole of the original deposit plus accumulated interest, which check the husband indorsed in blank and handed to William, who concededly received the proceeds. The husband died December 16, 1959 leaving a last will and testament made February 20, 1959.
 
 [1]
 
 Six months after
 
 *26
 
 his death and on July 1, 1960, which was during the pendency of the will contest, the respondent herein proceeded to close the joint account opened in his and his father’s name by withdrawing the whole balance in the sum of $22,113.74.
 

 In this proceeding the committee petitioner contends that upon the husband’s death her ward, the incompetent Anna, became the sole and exclusive owner of all moneys in the two accounts opened in 1957 upon the theory that, at the time of the change-over to respondent son, the latter was acting as decedent’s confidential agent and trustee and that he may not be permitted to retain the funds he thus received, unless he established that the transfers to him were intended by the decedent, were completely free from fraud and were bona fide in every way; in other words, whether at the time of the transfer in 1959 to respondent son the decedent knowingly and consciously understood that he was closing out the accounts opened in 1957 in favor of his wife and himself and was transferring the proceeds. In
 
 Matter of Creekmore
 
 (1 N Y 2d 284), a Surrogate’s Court proceeding, we ruled that section 239 of the Banking Law is not necessarily conclusive of a depositor’s intention to vest in the survivor title to a deposit made in the form of a joint account where the circumstances are such that the depositor may not have understood what she was doing. In that case there was proof that the decedent, then suffering a terminal illness, had requested her attorney to prepare papers appointing the respondent her attorney in fact so as to permit withdrawal of funds from her bank account to pay expenses incident to her care and maintenance. For reasons urged by the bank she was persuaded not to execute a power of attorney but to change her account to a joint form payable to either or survivor. The decedent had theretofore made a will bequeathing her estate in equal parts to her two daughters. Her bank account represented the bulk of her estate. We deemed that under such circumstances the survivor was obliged to demonstrate that the. decedent knew the crucial difference between giving a power of attorney to respondent for the limited purpose of drawing expense checks against her account and establishing her accounts in joint form payable to either or survivor.
 

 Here we are also dealing with a joint account payable to either or survivor, and created under circumstances open to doubt.
 
 *27
 
 Even though the court below has found against the petitioner as to the husband’s lack of capacity to make the transfer, there must, nevertheless, be a new trial. Regardless of whether the husband’s act of transfer to his son was voluntarily and understandingly made, the wife may, nevertheless, have continued to retain an interest in the account. Thus, had the joint account which the husband established in 1957 with his wife, payable to either or survivor, remained intact to the date of his death, the wife, as survivor, would have been entitled to the whole thereof (Banking Law, § 239, subd. 3; Domestic Relations Law, § 56-a, eif. April 20, 1959;
 
 Matter of Porianda,
 
 256 N. Y. 423). The presumption that a joint account was intended, however, is merely a rebuttable presumption as to funds withdrawn prior to the death of the depositor
 
 (Matter of Porianda, supra).
 
 As to any moneys withdrawn from such an account during the joint lives of the two named persons, there is still, after the death of either of them, the presumption that the moneys so withdrawn by one had in fact belonged to both
 
 (Moskowitz
 
 v.
 
 Marrow,
 
 251 N. Y. 380, 397;
 
 Marrow
 
 v.
 
 Moskowitz,
 
 255 N. Y. 219) and this is so whether an account payable to either or the survivor is opened by the depositor in his name and that of his wife, or some one other than his wife
 
 (Moskowitz
 
 v.
 
 Marrow,
 
 251 N. Y. 380, 397, supra;
 
 Russo
 
 v.
 
 Russo,
 
 17 A D 2d 129; see, also, 1959 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1959, No. 65(J)]; cf.
 
 Matter of Polizzo,
 
 308 N. Y. 517, and cases there cited involving personal property other than bank accounts in statutory form). In other words, the withdrawal of moneys from the joint account does not destroy the joint tenancy, if one was created. It merely opens the door to competent evidence, if available, that no joint tenancy was intended to be created
 
 (Matter of Porianda, supra).
 
 When a joint tenancy is created, each joint tenant has the right as a joint owner of the bank account to withdraw a moiety (half) or less than a moiety for his own use and thus destroy the joint tenancy as to such withdrawals
 
 (Matter of Suter,
 
 258 N. Y. 104). A joint tenant who withdraws a sum in excess of his moiety is liable to the other joint tenant for the excess so withdrawn
 
 (Matter of Juedel,
 
 280 N. Y. 37;
 
 Walsh
 
 v.
 
 Keenan,
 
 293 N. Y. 573; cf.
 
 Russo
 
 v.
 
 Russo,
 
 17 A D 2d 129,
 
 supra).
 

 
 *28
 
 In the case before us no consideration was given to the question whether or not the husband intended to and did in fact establish a joint tenancy by opening the savings account in 1957 with his wife Anna. Upon a new trial the wife will be aided by the presumption that the husband intended a joint tenancy with his wife when he opened the 1957 account
 
 (Matter of Porianda, supra).
 
 If the presumption is not overcome, the husband’s withdrawal in 1959 of all the funds in that account was in derogation of his wife’s right and interest in those funds. In such event the wife, or in this case, her committee, would be entitled to at least her moiety (one half) of the account withdrawn without her consent during her lifetime, or, as survivor of her husband, to the whole thereof, if on a new trial the proof fails to establish that the closing out of the 1957 account by the decedent and the subsequent transfer to the son were voluntarily and understandingly made.
 

 Since there is to be a new trial upon which issues of mental capacity, fraud and undue influence must be explored in connection with the transfer of the alleged joint account, we deem it essential that those issues also be explored upon the new trial with respect to the closing out by the husband of the account opened in trust for his wife and the turning over of the proceeds to the respondent without consideration.
 

 The order appealed from should be reversed and a new trial granted, with costs to abide the event.
 

 Chief Judge Desmond and Judges Fuld, Van Voorhis, Burke, Foster and Scileppi concur.
 

 Order reversed, etc.
 

 [1]
 

 . The probate of the decedent’s last will and testament was contested by his daughter Maria and the special guardian of the incompetent widow, Anna, for alleged lack of testamentary capacity, and that its execution had been procured by fraud and undue influence allegedly practiced by the son, William Krimer, and the additional reason that the testator did not understand the will and its import. Following a trial, on framed issues, the Surrogate directed the jury to enter a verdict admitting the will to probate and dismissed the objections. Upon appeal the Appellate Division, Second Department, affirmed (16 A D 2d 665 [16]). Upon appeal to this court we reversed the order of the Appellate Division and granted a new trial, in a decision handed down herewith (13 N Y 2d 739), on the general ground that, upon the evidence adduced, issues of fact were presented that should have been submitted to the jury for determination.