**Russell HORTON, Administrator of the Estate of Lettie Horton, Deceased, Appellant,**

v.

**ESTATE of Ben ELMORE, Deceased, Charles F. Elmore, Administrator W/W/A, Respondent.**

No. 24638.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1967.

George S. Thompson, Salisbury, for appellant.

Edward W. Speiser, Salisbury, for respondent.

HOWARD, Presiding Judge.

This case originated in the probate court of Chariton County, Missouri, wherein Lettie Horton filed her petition for an order directing the administrator of the estate of Ben Elmore, deceased, to deliver to her a promissory note dated July 17, 1964 in the amount of $10,000.00, executed by F. B. Manion and Ruby F. Manion and payable to Ben Elmore or Lettie Horton as tenants by the entirety. Before this application could be heard, Lettie Horton died and her administrator was substituted as petitioner. Thereafter, the probate judge was disqualified and the matter was certified to the circuit court of Chariton County where a trial to the court sitting without a jury resulted in a judgment finding the issues for the defendant and against the plaintiff and declaring that the note was the property of the estate of Ben Elmore. Plaintiff has duly appealed to this court.

Plaintiff contends that the finding of the trial court was erroneous because, under the evidence, it should be that the note in question became the sole property of Lettie Horton on the death of Ben Elmore. The facts appear to be as follows. Ben Elmore was 84 years of age when he died April 28, 1965. He was a retired farmer and for a number of years had engaged in the business of loaning money and collecting the interest and principal on the notes evidencing such loans. He and Lettie Horton are described as having been sweethearts for over 30 years. They never married. At the time here pertinent, Ben Elmore owned an apartment building in which there were four apartments. He occupied one apartment and Lettie occupied another apartment. Lettie did not pay any rent for her apartment. She performed many errands for Ben and as one witness descibed it, she did his legwork. She took checks to the bank and cashed them for Ben and paid his utility bills and performed other similar minor services. She was 77 years old at the time of her death on January 20, 1966. Ben Elmore stated to several people that he was going to take care of Lettie as long as she lived and was going to leave her a life estate in the apartment house in his will. One witness with whom Ben discussed business matters advised him that the apartment house would not pay for itself and that Lettie could not maintain it unless Ben left her some money to take care of the apartment house.

For a number of years Ben Elmore had a $10,000.00 note from F. B. Manion. This note had been renewed several times. The first two or three notes evidencing this debt were made payable to Ben Elmore alone and were signed by Mr. Manion alone. A year prior to the making of the note here in question, which would have been in July of 1963, the note for this $10,000.00 debt was renewed and for the first time it was made payable to "Ben Elmore or Lettie Horton as tenants by the entirety". Marjorie Henry, the vice president and secretary of the Salisbury Bank, testified that "sometime ago" Lettie came into the bank with a note and told her that Ben Elmore wanted her (Lettie's) name inserted in the note. She advised Lettie that this could not be done but that the note would have to be rewritten. She did not know what note Lettie had with her at that time.

On July 17, 1964, Ben Elmore went to F. B. Manion's office and a new note was made. Ben Elmore told Manion that he wanted the note payable to "Ben Elmore or Lettie Horton as tenants by the entirety". Manion called his office girl into his private office and, in the presence of Ben Elmore, instructed her how to type up the note. She wrote the note as instructed and returned it to Mr. Manion. Manion then signed it in Ben Elmore's presence and the prior note was delivered to Manion who destroyed it immediately after Ben Elmore left with the new note. This note was

"Due five years from date. Borrower to pay $2,000.00 per year on principal, with privilege to pay all or any part any interest paying date. Interest payable annually * * *". Sometime later, probably two or three weeks, Ben Elmore sent Lettie with the note to Mr. Manion's office to secure the signature of Mrs. Manion. Mr. Manion sent Lettie to his home with the note and his wife, Ruby Manion, then signed the note. This was the first time that Mrs. Manion had signed any of these notes.

When this note was made out, Ben Elmore told Manion that he wanted Lettie to have the money for the upkeep of the apartment house. Manion testified that the upkeep of the apartment house was his (Ben Elmore's) main thought.

After this was done, Ben stated to various witnesses that he had shown the note to Lettie and would like for her to have it but he was afraid she might misplace or destroy the note and he would keep the note himself. He stated that with Mrs. Manion's signature, it was the best note in town and better than any they had at the bank. He stated that he had the house willed to Lettie for her lifetime and that he had left the note to Lettie. One witness testified that Ben told him the note was payable to Lettie. This witness also testified that Ben stated that he wanted the interest on the note as long as he lived. In the past, Manion had desired to pay off the debt but Ben Elmore would not let him do that, stating that he wanted the interest, not the principal.

After Ben Elmore went to the hospital for what turned out to be his last illness, a nephew, Charles F. Elmore, who became his administrator, was given a power of attorney to handle his business affairs. At this time, his sister-in-law and another nephew went to his apartment and unlocked his desk. In this desk they found a cigar box in which was a bundle of notes, including the Manion note here in question. These were taken from the desk to the bank

where Charles Elmore placed them in a safety deposit box. Lettie Horton never made any claim to or demand for this note until her petition was filed in probate court January 12, 1966.

▆ The manner in which this note is made payable, i. e. to "Ben Elmore or Lettie Horton as tenants by the entirety", creates an ambiguity. In such circumstances, we must determine the intention of the parties from the instrument itself and from all of the surrounding circumstances. See Creek v. Union National Bank in Kansas City, Mo., 266 S.W.2d 737, and Mercantile-Commerce Bank & Trust Co. v. Kieselhorst Co., 350 Mo. 30, 164 S.W.2d 342. It is obvious that since Ben Elmore and Lettie Horton were not husband and wife, they could not hold title to this instrument as tenants by the entirety. Plaintiff contends that under all of the evidence, this court should determine that they held title as joint tenants with right of survivorship. He places most emphasis on the incident of survivorship. The use of the word "or" instead of the word "and" between the names of the two payees militates against a finding of joint tenancy. The word "or" means either one or the other; it does not mean both. See Jenkins v. Meyer, Mo., 380 S.W.2d 315; Longacre v. Knowles, Mo., 333 S.W.2d 67; and Hemphill v. Jackson, Mo.App., 306 S.W.2d 610. One aspect of a joint tenancy is that both parties presently have an ownership interest in the property held. Each one has a present interest in the property, it is not one or the other, it is both. This concept is directly contrary to the use of the word "or" in describing the payees of the note in question.

▆ The use of the words "as tenants by the entirety" in relation to two people who are not husband and wife, is so incongruous to those who are cognizant of the true legal meaning of this phrase as to create confusion and to convey no definite intention. It may be evidence of an intention to create a joint tenancy with right of

survivorship, see State ex rel. Ashauer v. Hostetter, 344 Mo. 665, 127 S.W.2d 697, and if the evidence of the surrounding circumstances is sufficient, the court on the basis of such evidence may determine that a conveyance to two people who are not husband and wife "as tenants by the entirety" may create a joint tenancy with right of survivorship. See Creek v. Union National Bank in Kansas City, Mo., 266 S.W.2d 737. However, standing alone, these words do not create a joint tenancy with right of survivorship. They only direct the attention of the court to the evidence of the surrounding circumstances in an attempt to determine the intention of the parties.

■ We have no statute to create a presumption in this matter, such as is true as to bank accounts, savings and loan association accounts and real estate (see Sections 362.470, 369.150 and 442.450, RSMo 1959, V.A.M.S.). Therefore, we are left exclusively to the evidence adduced from which we must determine the intention of the parties. As was said in Longacre v. Knowles, 333 S.W.2d 67, l. c. 70, where the instrument is ambiguous as to the nature of the interest created, the courts will not, absent a showing of intent, construe it to create a joint tenancy.

■ In our review of this court tried case, we review the case upon both the law and evidence as in suits of an equitable nature. However, we are not authorized to set aside the judgment of the trial court unless it is clearly erroneous, and in reaching our conclusion we must give due regard to the opportunity of the trial court to judge of the credibility of the witnesses, Civil Rule 73.01, V.A.M.R. In the case at bar, the trial court found the issues for the defendant and that the note in question was the property of the estate of Ben Elmore and that Lettie Horton, and after her death her administrator, did not own the note. The evidence shows that Ben and Lettie had been sweethearts for over 30 years. His family did not approve of this

relationship but it continued to exist. Ben provided Lettie with a rent-free apartment in his apartment house; they were frequently seen together, and she ran errands for him and did his legwork. There is no evidence of any cohabitation or as to the other details of their relationship. Ben often and repeatedly expressed the intention of taking care of Lettie and he stated his intentions to (and apparently he did) will her this apartment house for life. He also stated that he intended to leave her the note for the upkeep of the apartment house. Although Lettie knew about the note and had it in her physical possession when she took it to secure the signature of Mrs. Manion, the note was not left with Lettie but possession remained in Ben. It was found in his locked desk along with other notes which belonged only to Ben when he became incapacitated and his attorney in fact began to handle his affairs. There is no evidence that Lettie ever made any claim to ownership of this note for over 8 months after Ben's death. No interest on this note was due until after Ben's death but it was due in July of 1965 prior to the petition filed by Lettie in probate court on January 12, 1966. No interest was demanded or paid. Interest on prior notes, including the one which this note replaced and which was made payable in the same language as the note in question, was paid to Ben.

■ From all of this, we believe that the trial court could conclude that Ben intended to take care of Lettie during his lifetime and to provide for her after his death and that in willing her a life estate in the apartment house, together with leaving her the note for the upkeep of the apartment house, it was his intention to provide for her care after his death and that as to the note in issue, his intention was to make a testamentary disposition and not a gift effective on the date of the note. Such testamentary disposition can not be made in this manner because is does not comply with the statute of wills, Section 474.320, RSMo 1959, V.A.M.S. See Jen-

kins v. Meyer, Mo., 380 S.W.2d 315, and Longacre v. Knowles, Mo., 333 S.W.2d 67. This intention is not inconsistent with his use of the words "or" and "as tenants by the entirety". "Or" is incompatible with a present joint interest. It is obvious that Ben Elmore did not understand the words "as tenants by the entirety". However, it is not inconceivable that he believed that these words would pass the note to Lettie on his death and that he used such words for this purpose and not for the purpose of creating a present joint interest.

There is no real conflict in the testimony in this case; however, this does not exclude the issue of credibility as to which we must defer to the trial court. We do so. After careful study, we have concluded, on the basis of the foregoing analysis, that we cannot find that the ruling of the trial court is clearly erroneous. We therefore affirm the judgment.

All concur.