Albert R. CARROLL, Plaintiff-Appellant,

v.

Adell HAHN and Roosevelt Federal Savings & Loan Association, Defendants-Respondents.

No. 34721.

Missouri Court of Appeals, St. Louis District, Division Two.

June 19, 1973.

Motion for Rehearing or Transfer Denied Aug. 16, 1973.

King & Short, Clayton, for plaintiff-appellant.

John H. Scheele, Kirkwood, for Hahn.

Millar, Schaefer, Ehling & Wallace, Samuel C. Ebling, St. Louis, for Roosevelt Federal.

SIMEONE, Judge.

This is an appeal by plaintiff-appellant, Albert R. Carroll, from a judgment entered by the Circuit Court of St. Louis County which declared the defendant-respondent, Adell Hahn, to be the sole, lawful owner of a savings account in Roosevelt Federal Savings & Loan Association.

On March 18, 1971 Carroll filed a petition in the Circuit Court of St. Louis County seeking to impress a trust upon funds in a joint savings account at Roosevelt Federal and praying that said funds "be declared in equity the property of Plaintiff." The petition alleged that on December 24, 1970 an account was opened with an initial deposit of $4,373.27 at Roosevelt Federal (No. 21-05023) in the names of Albert R. Carroll and Leroy Purdy (Carroll's stepfather) as "joint tenants with right of survivorship." Then on February 8, 1971 Mr. Purdy, without the consent and knowledge of Carroll, transferred the account (containing $4,813.27) to another one in the names of Purdy and defendant, Adell Hahn. On March 15, 1971 Mr. Purdy died. Carroll alleged in his petition that as the survivor he is entitled to the proceeds of the account. The answer of Hahn alleged that the initial account was opened with funds belonging to Purdy and that the account was opened for the purpose of "convenience only." The answer

further alleged that Purdy "closed said account . . . by withdrawing the balance thereof in an amount of $4,813.27 and by transferring the same" to another account in the names of Purdy and Adell A. Hahn "payable to either or the survivor as joint tenants [with rights of survivorship] and not as tenants in common." Roosevelt Federal also filed an amended answer admitting the facts alleged in the petition and answer, and stated that it was indifferent to the claims and had "no interest in or claim upon the monies held."

The evidence on behalf of the plaintiff showed that Carroll and Hahn are cousins; that Leroy Purdy was the stepfather of Carroll (Purdy and Carroll's mother having been married in 1936). Carroll had lived with his mother and stepfather from 1936 until 1941 and again from 1945 through most of 1946. After the marriage of Purdy and Carroll's mother in 1936 they bought a home in St. Louis County with funds left to Carroll in 1936 by his uncle and loaned to Purdy and his mother. They lived in that home for a time and then purchased a home in North St. Louis with funds from the sale of the home in the county. Carroll's mother died in 1970 and after that Purdy came to live with Carroll.

Mr. Purdy and his wife (Carroll's mother) had a joint savings account at Roosevelt Federal in an amount of approximately $4,000, and following the death of Purdy's wife an account was created in the names of Purdy and Carroll. Carroll contended these funds came from the "sale of the property." Carroll testified that there was an understanding between Purdy and himself that the money from the loan would be Carroll's if he survived Purdy.

At the time the Purdy-Carroll account was closed on February 8, 1971, Purdy was living with Adell Hahn and her husband. After Purdy's death Carroll was told by Mr. Hahn that the account had been "changed." Upon investigation Carroll learned that the account had been closed

and a new one opened in the names of Purdy and Adell Hahn.

On cross-examination Carroll stated that he did not know whether his uncle had left a will and explained the "money" left him by saying "Well, let's put it this way, my mother was working in a laundry and I was going to school. Somebody was paying it; it wasn't my mother."

From the time of the death of Mrs. Purdy on December 13, 1970, to December 24, 1970, the only person on the Mr. and Mrs. Purdy account was Mr. Purdy. On December 24 Mr. Purdy added Carroll's name to the account. When asked whose funds were used to open the Purdy-Carroll account Carroll's answer was "My mother's, my stepfather's and mine—." Carroll made no deposits or withdrawals into or from the account.

Adell Hahn testified that she was a niece by marriage to Leroy Purdy and that she and Carroll were first cousins; that she lived with Leroy Purdy while her husband was in the service and then Purdy resided in her home for several months prior to his death. Prior to his death Mr. Purdy brought a signature card home for her to sign relating to the Purdy-Hahn joint account in Roosevelt Federal and Mr. Purdy returned it. Mr. Purdy possessed the passbook.

On June 1, 1972 the trial court made extensive findings of fact and conclusions of law. The court found that in 1969 a joint account in the names of Leroy Purdy and his wife, Anna M. Purdy, was opened at Roosevelt Federal Savings & Loan Association; that thereafter Anna Purdy died on December 13, 1970; that on December 24, 1970 the balance of the account in an amount of $4,349.67 was transferred by Purdy to a new account in the names of Purdy and Carroll, payable to either or the survivor as joint tenants, and that the account was closed on February 8, 1971, at a time when the account contained a balance of $4,813.27. The court found that on February 8, 1971 this balance was trans-

ferred by Purdy to a new savings account in the names of Purdy and Hahn "payable to either or the survivor as joint tenants and not as tenants in common." The court further found that upon the death of Purdy Adell Hahn "became and continues to be the sole surviving tenant of said savings account"; that "Plaintiff has failed to sustain the burden of proof essential to establish any vested interest in Plaintiff to any of the funds . . ." and failed to sustain the burden of proof essential to establish a resulting trust in his favor.

The court concluded, therefore, that after Purdy opened the Purdy-Carroll account Purdy was lawfully entitled to withdraw and appropriate to his own use any portion, including the entire balance of funds credited to the account, and that he lawfully withdrew the entire balance by transferring the same to a new savings account in the names of Purdy and Hahn, payable to either or the survivor as joint tenants and not as tenants in common. Therefore, upon the death of Purdy the balance in the Purdy-Hahn account, in an amount of $4,813.27 with interest thereon, "became vested solely and entirely in Defendant Adell A. Hahn as the sole surviving tenant of said savings account . . ."

The appellant's only point on this appeal is that the trial court erred in refusing to impress a constructive trust on the funds in his favor because he had a vested interest in the funds and because they were improperly withdrawn and assigned without his consent to his damage. As best we understand it, appellant's theory is that: (1) there was sufficient evidence to conclude that the funds in the accounts originated from an inheritance from his uncle some 30 years before, and (2) once the joint account was opened in the names of Purdy and Carroll on December 24, 1970, Purdy could not, without Carroll's knowledge and consent, assign the entire account in such manner as to divest him of his rights to the funds, but the funds retained their character as joint property and may be traced to the Purdy-Hahn account.

■ This is a court-tried case. We are required to review the case de novo both upon the law and the evidence and make our own independent findings of fact, but we are not to set aside the judgment of the trial court unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of the witnesses. Rule 73.01(d), V.A.M.R.

We agree with the trial court that the plaintiff failed to sustain the burden of proof essential to establish a trust in his favor or to establish any actual interest in or any right to the funds in controversy.

■ Appellant based his right to the funds on a claim that he received an inheritance in 1936 and that he loaned this money to his mother and his stepfather, Mr. Purdy, so they could buy a home in St. Louis County. Now, over thirty years later, during which time Mr. and Mrs. Purdy bought and sold several homes, appellant is claiming that the money can be traced and that he has an interest in the money in the account. The evidence as developed in the record was insufficient to sustain appellant's burden to establish that the money in the account belonged to him under any theory, including that of a constructive or resulting trust. There is no clear, cogent, convincing proof of a purported loan, no evidence as to the amount of any loan or any clear evidence to trace the money so as to show Carroll's ownership in the present funds.

In Ambruster v. Ambruster, 326 Mo. 51, 31 S.W.2d 28 (1930), the supreme court stated that "The rule is well settled that an extraordinary degree of proof is required to establish a parol [or constructive] trust . . . The cases use various expressions, as that the showing must be 'clear,' 'cogent,' 'convincing,' or 'such as to leave no room for a reasonable doubt in the mind of the chancellor.'" Ambruster v. Ambruster, *supra,* 31 S.W.2d at 34. Under these tests Carroll failed to sustain his burden of proof to establish a trust in his favor.

The appellant also contends that while one joint owner of a joint account may withdraw a portion or all of the account, he may not assign the entire account so as to divest the other joint tenant of his interest in the funds. In such instance he contends than the funds retain their character as joint property and may be traced so that a trust may be impressed thereon. Implicit in his contention is the statement that once a joint account payable to either or the survivor is opened, the joint tenant who deposited the funds cannot appropriate them so as to divest the interest of the other joint account owner, Carroll. The issue raised, therefore, is whether Purdy, having deposited the funds, may withdraw them and place them in another joint account so as to divest the interest of Carroll.

■ We do not deal here with the traditional common law joint tenancy relationship. Nor do we deal with tenancies by the entirety. Rather, we deal with a unique, specialized type of relationship—a joint savings account which is not governed by the traditional common law rules relating to joint tenancy.

The joint bank account payable to either or the survivor has had a long and turbulent history. Courts have struggled with the "joint account" in hundreds of decisions. The great difficulty that the courts have had in determining the validity and effect of joint accounts results from the fact, as stated in the case of In re Schneider's Estate, 6 Ill.2d 180, 127 N.E.2d 445, 447, that the relationships created " . . . do not fit readily into common-law categories. The four unities of the common-law joint tenancy, the notion of an undivided moiety in each joint tenant, and the difficulty of applying the common-law concept of joint tenancy to a fluctuating *res* have caused difficulties. Common-law doctrines governing gifts of personal property have contributed their share to the complex of legal problems stemming from joint bank accounts, for the common law required a complete relinquishment of ownership by the donor in order to achieve an effective gift, while the joint bank account contemplates power of withdrawal by both parties . . ."

The latest pronouncement concerning the "joint account" by our supreme court is in the case of In re Estatae of LaGarce, 487 S.W.2d 493 (Mo. banc 1972). There the supreme court reviewed the history of joint accounts and stated that the " . . . heretofore indicated construction placed upon our joint account statutes [§ 369.150 (savings and loan associations) and § 362.-470 (banks)] is erroneous and has been misleading to depositors who have complied with said statutes . . ." In re Estate of LaGarce, *supra* at 500. That construction which the courts of this state followed prior to *LaGarce* was stated to be: " 'Deposits made and accounts created within the purview of these statutes presumptively become the property of the persons named as joint tenants and, absent competent evidence to the contrary, actually fix the ownership of the funds in the persons named as joint tenants with the attendant right of survivorship. * * * The presumption is rebuttable and may be overcome by competent parol or other evidence showing a different intent . . .' Melton v. Ensley, Mo.App., 421 S.W.2d 44, 51." In re Estate of LaGarce, *supra* at 499.

The *LaGarce* decision recognized that there was nothing in the statute which would warrant a rebuttable presumption which may be overcome by competent evidence and held that "It is our view that the statute creates what might be described as a statutory joint tenancy which should be given effect without consideration of the strict common-law requirements mentioned in the cases." In re Estate of LaGarce, *supra* at 500. The court concluded that "It is our view that if the statute is complied with, in the absence of fraud, undue influence, mental incapacity, or mistake, the *survivor will become* the owner of the account." (Emphasis added.) In re Estate of LaGarce, *supra* at 501.

As we understand it, *LaGarce* dealt specifically with the rights of the survivor upon the death of the other joint owner. Recognizing that the statute of wills should not prevail over equally valid statutes relating to deposits in banks and savings and loan associations, it held that joint account statutes create "what might be described as a statutory joint tenancy." In effect, *LaGarce* approved a testamentary arrangement and recognized a statutory alternative to a will. *LaGarce* recognized a specialized bank account-will by statute and in reality held that under the statutes a "statutory testamentary disposition" was created which must be given effect.

*LaGarce,* however, did not deal with rights of the parties to such joint accounts during their lives. While recognizing the power of withdrawal by both parties to the joint account, it did not determine the rights of the parties among themselves during their lives. "Upon the *death* of the depositor who furnished the money, we cannot see any reason why the *surviving* joint tenant should not be held to be the owner of the deposit *even though the donor may have intended to retain the beneficial interest in the account during his lifetime.*" (Emphasis added.) In re Estate of LaGarce, *supra* at 500–501.

■ We believe that the legal relationship that is created by the joint account statutes is, as *LaGarce* recognized, that of a stautory testamentary transfer, but prior to death it may be revoked by the depositor who furnished the money during his lifetime. While either party to the "joint account" may withdraw any or all of the funds so that they cannot be traced to third parties, yet during the lifetimes of the parties and as between themselves, the realities of ownership, the real intention of the parties and the purpose and nature of

the account may be shown to determine the interest each has in the account, thus subjecting the one who has deposited none of the funds to accountability and liability.[1]

*LaGarce* did not abolish the rule that during the lives of the parties the joint interest "readily yields" to the real intention of the parties. Ambruster v. Ambruster, *supra,* 326 Mo. 51, 31 S.W.2d at 36. Many persons open joint accounts for the convenience of one and often one deposits all of the funds. Judge [Justice] Cardozo has stated that such accounts are opened by the "simple and the humble." What is sought and what is needed is to let the parties carry out their will, and during their lives there should be "flexibility and simplicity," not "rigidity," nor an absolute rule that upon the opening of the joint account the person who furnishes none of the money obtains an immediate joint interest in the funds which may be traced. See discussion by Judge [Justice] Cardozo in Moskowitz v. Marrow, 251 N.Y. 380, 167 N.E. 506, 512 (1929).

■ Since Purdy deposited the funds he had the power to revoke the account and appropriate any or all of the funds and to open the new account in his and Hahn's name as "joint tenants" with right of survivorship.

Under similar circumstances as here involved courts have held that the one who deposited the funds has the power to transfer those funds to a new account so as to divest the interests of a joint tenant. Rose v. Hooper, 175 Neb. 645, 122 N.W.2d 753 (1963). See also Kepner, Five More Years of the Joint Bank Account Muddle, 26 U.Chi.L.Rev. 376, 396–97 (1959).

Appellant relies on Feltz v. Pavlik, 257 S.W.2d 214 (Mo.App.1953), for the proposition that Purdy could not divest the rights of Carroll. That case is distinguish-

---

1. There is no showing here of the agreement signed by the parties. If the joint account is accompanied and commemorated by an integrated unambiguous agreement, such an agreement constitutes the intention of the parties which may not be varied by parol evidence. Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817 (1950).

able. In that case the funds from a joint account of a husband and wife as tenants by the entirety were held to retain their joint character after they had been removed by the husband, placed by his brother in a new account under his brother's name and ultimately in a joint account of the brother and his wife. The evidence in that case indicated that the funds in the original account represented the accumulation of the individual savings and earnings of both the plaintiff-wife and her deceased husband. Since plaintiff was shown to have made personal contributions to the purchase of the property, which when sold resulted in the joint account, that case, unlike the present, was a proper subject for tracing the joint funds and the imposition of a constructive trust thereon. Furthermore, the husband fraudulently transferred the money to his brother and thus was a case involving fraud upon the marital rights of the wife. See *Feltz* distinguished in Staehle v. Mercantile Trust Co., 327 S. W.2d 220, 226 (Mo.1959).

Under all the evidence presented here and under the law we conclude, as did the trial court, that " . . . upon the death of . . . Leroy Purdy . . . lawful ownership of said savings account [in the names of Purdy and Hahn] . . . and the lawful right to the entire balance . . . together with all accruements thereto inclusive of interest thereon became vested solely and entirely in Defendant Adell A. Hahn as the sole surviving tenant . . ."

The judgment is affirmed.

SMITH, P. J., and KELLY, J., concur.

McMILLIAN, J., dissents in separate dissenting opinion.

McMILLIAN, Judge (dissenting).

I dissent.

The court has been presented with two valid joint accounts with one common joint depositor who appropriated the funds of one account to establish the second. We are asked to choose between the two. Resolution of the dilemma must turn on analysis of the two substantive issues raised by this case: (1) what rights accrue to cotenants of a joint account opened according to statute; and (2) what effect is to be given to appropriation of all funds from a joint account by one co-tenant.

At common law, plaintiff Carroll's claim to the funds in question would fail. A common law joint tenancy requires four unities: interest, time, title, and possession. Plaintiff's testimony fails to establish unity of either interest or possession. Furthermore, Purdy's appropriation of the funds in the first account destroyed whatever unities may have existed in that account and itself operated as a severance of the joint tenancy. The consequent right of survivorship was extinguished. It might also be noted that at common law defendant Hahn's right to survivorship as a joint tenant would fail, since she also failed to establish unity of either interest or possession.

The relationships created by joint banking and savings accounts do not fit readily into common law concepts. In an attempt to meet the problems presented by these accounts, courts in other states have adopted many varying theories to explain what has been called the "poor man's will." Much confusion has resulted. Our Supreme Court fully discussed these various theories of joint tenancy and the resulting difficulties in In re Estate of LaGarce v. Mouldon, 487 S.W.2d 493 (Mo. banc 1972), and I will not repeat the arguments here.

Since joint accounts of the type presented by this case are governed by statute in Missouri, I quote the applicable section of § 369.150, RSMo 1969, V.A.M.R. (Savings and Loan Associations):

"2. Such account, and any additions made thereto by any of them, shall become the property of such persons as joint tenants and shall be held for the

exclusive use of the persons so named and may be paid to any person named therein, or the survivor or survivors of them."

This statute and § 362.470, applying to joint accounts in banks and trust companies, were first reviewed in Ball v. Mercantile Trust Co., 220 Mo.App. 1165, 297 S.W. 415 (1927), where this court adopted the New York construction of the same statutory language. We held that deposits made and accounts opened within the purview of the above statutes presumptively became the joint property of the persons named as joint tenants, and that, absent competent evidence to the contrary, such deposits actually fixed ownership of the funds in the persons named as joint tenants, with all the incidents attaching to such ownership. The effect of this construction was that a deposit opened in compliance with the statute carries with it the incidents of joint tenancy, namely a transfer of a present interest in the moiety, or undivided half of the fund, and a future interest through survivorship in the whole of the fund. The presumption that a true joint tenancy was so created could be rebutted only by competent evidence showing that the parties in fact intended something otherwise.

This ruling was later affirmed by our Supreme Court in Mississippi Valley Trust Co. v. Smith, 320 Mo. 989, 9 S.W.2d 58 (1928), and has been followed until recently. See Ambruster v. Ambruster, 326 Mo. 51, 31 S.W.2d 28 (1930); In re Patterson's Estate, 348 S.W.2d 6 (Mo.1961), and Melton v. Ensley, 421 S.W.2d 44 (Mo.App. 1967).

There has been, however, some confusion about which interests vest in the joint depositors when such a joint account is opened. Some have suggested that only a future interest through survivorship is carried with the deposit. In Moskowitz v. Marrow, 251 N.Y. 380, 167 N.E. 506 (1929) cited with approval in Ambruster v. Ambruster, supra, Judge Kellogg spoke to this question:

". . . Assuming that, upon the making of the deposits by Fannie Manheimer, in the joint names of herself and Pearl Harris, the two become 'joint tenants,' it is immaterial whether Pearl Harris then acquired an interest in a moiety or an interest in the whole of the funds deposited. If she received the former, rather than the latter, to that extent at least the deposit was irrevocable, *since she had acquired a vested property interest.* (Emphasis added.)

". . . To say that they became joint tenants through survivorship only is to state an absurdity. Certainly the law has never indulged in the fiction that a joint tenancy between two persons may arise after the death of one person, when only one survives." (at 509)

A Missouri court ruled on the same question in Horton v. Estate of Elmore, 420 S. W.2d 48, 51 (Mo.App.1967), where the court said:

". . . One aspect of a joint tenancy is that both parties presently have an ownership interest in the property held. Each one has a present interest in the property, it is not one or the other, it is both. . . ."

Joint tenancy under § 369.150 was recently reconsidered by the Supreme Court in In Re Estate of LaGarce v. Mouldon, supra, where the court put to rest any of the strained constructions of the past. Justice Holman, speaking for a unanimous court, said:

". . . Our courts have placed limitations thereon and have added requirements thereto which are not contained in the statutes and are not warranted. Section 360.150 specifically and unqualifiedly provides that if the certificate is issued in the statutory form the account 'shall become the property of such persons as joint tenants . . . or the survivor.' There is nothing in the statute which would warrant the conclusion that a rebuttal *presumption* is created

that the deposit shall become the property of such persons as joint tenants and that it may be shown by competent evidence that it was not a joint tenancy even though the statutory form had been complied with. The statute says it '*shall become the property of such persons as joint tenants*' . . ."

"It is our view that the statute creates what might be described as a *statutory joint tenancy* which should be *given effect without consideration* of the *strict common-law requirements* mentioned in the cases." (Emphasis added.)

While the facts in LaGarce are different from those presented in this case, the ruling on the meaning of § 369.150 is applicable to all deposits made and accounts opened under that statute. As long as the parties comply with the statute, a true joint tenancy, unencumbered by the common law requirements of unity, is created. Presumptions about the intent of the parties when the account was opened are no longer valid. In fact, the intent of the parties is immaterial, in the absence of fraud, undue influence, mental incapacity, or mistake. The plain language of the statute, that "Such account . . . shall become the property of such persons as joint tenants . . ." will be enforced.

Since a true joint tenancy is created by compliance with the statute, it necessarily follows that the incidents of such ownership attach from the moment the deposit is made. Both tenants, whether one or both contribute funds, become vested with a present interest in a moiety of the fund, and both are vested with a future interest through survivorship.

Turning to the facts presented by this case, it should be noted that the Carroll-Purdy account was established in compliance with § 369.150. I would therefore hold that the deposit by Purdy naming himself and Carroll as joint tenants created a true joint account. I would also hold that the deposit vested in both Carroll and Purdy (1) a present interest in an undivided half of the fund, and (2) a future interest in the whole of the fund through survivorship.

The second question raised in this appeal is whether one cotenant in a joint account may appropriate the entire fund for himself without liability to the other. Defendant Hahn asserts that Purdy's withdrawal of funds from the Carroll account was lawful and acted to sever that account. Defendant claims that under § 369.150 the funds in a joint account "may be paid to any person named therein, or the survivor or survivors of them."

The power to withdraw, however, is different from the power to appropriate the entire account. This court considered that difference in Feltz v. Pavlik, 257 S.W.2d 214, 218 (Mo.App.1953), where we said:

". . . While either tenant of a joint bank account may, without the other's consent, withdraw all or part of the fund . . . a joint owner may not assign the entire account . . . so as to divest the other joint tenant of his right to the funds. 14 Am.Jur., § 84, p. 148; 48 C.J.S. Joint Tenancy § 17, p. 936 . . ."

In *Feltz* we held that the withdrawer, who later died, had no power to divest his wife without her consent of her joint ownership in a bank account, and that the funds withdrawn retained their joint character when they were deposited in a new account with the withdrawer's brother, and in later successive accounts when withdrawer died.

A similar ruling on the question of appropriation is given in Ambruster v. Ambruster, supra, where the court said (326 Mo. 51, 31 S.W.2d l. c. p. 37):

". . . the joint form of the account, either or the survivor to draw, of itself alone raises a presumption of fact, or inference, that the joint interest of the depositors follows funds withdrawn by either and negatives the idea that such withdrawals were severed from the joint estate and appropriated by the drawer to his own use . . ."

When the presumptions ruled invalid by *LaGarce* are stripped from this ruling, we

are left with the plain meaning that the joint interest of both depositors follows funds withdrawn by either.

New York courts interpreting a like statute have reached like results. In Moskowitz v. Marrow, supra, the court held that a true joint account, once established, could not be revoked by one of the cotenants, and that even a donor-depositor had no power to transfer funds from a joint account to an account in her own name. In Bricker v. Krimer, 13 N.Y.2d 22, 241 N.Y. S.2d 413, 191 N.E.2d 795 (1963), the court, in ordering a new trial, said that withdrawal of funds from a joint account does not destroy the joint tenancy, and that a joint tenant who withdraws in excess of his moiety is liable to the other tenant for the excess so drawn. See also Walsh v. Kennan, 293 N.Y. 573, 59 N.E.2d 409 (1944); In re Will of Filfiley, 63 Misc.2d 824, 313 N.Y.S.2d 793 (Sur.Ct.1970).

Consequently, I would hold that Purdy's unilateral appropriation of the entire account with Carroll without Carroll's knowledge or consent was ineffectual to destroy the joint tenancy. The funds on deposit with the Association standing in the name of defendant Hahn did not lose their character as joint property from the first account. I would further impose a constructive trust upon the funds now held by defendants.

Since the account opened by Purdy with defendant Hahn was also established according to statute, I would not follow Feltz, supra, in awarding all of the money in the original account to the original joint tenant. I would rule that only Carroll's moiety in the first account could be traced to the second account. Bricker v. Krimer, supra. Plaintiff would therefore be entitled to one-half of the funds in the second Purdy-Hahn account at Purdy's death, and defendant is entitled to the other half.

I would reverse the judgment with directions in accordance with the views expressed herein.