In re ESTATE of Fred Hiram HAMPTON, Deceased.

Mary BELL et al., Plaintiffs-Respondents,

v.

Edna Elizabeth HAMPTON, Individually and as Administratrix of the Estate of Fred Hiram Hampton, Deceased, Defendant-Appellant.

No. 10196.

Missouri Court of Appeals, Springfield District.

Feb. 22, 1977.

James D. Sickal, David E. Blanton, Blanton, Blanton, Rice & Sickal, Sikeston, for plaintiffs-respondents.

C. A. Powell, Powell & Ringer, Dexter, for defendant-appellant.

Before BILLINGS, C. J., and STONE and TITUS, JJ.

BILLINGS, Chief Judge.

In a bench trial the court ruled in favor of plaintiffs on their petition for discovery of assets and accounting and on defendant's "cross-petition" to withdraw assets from decedent's estate. We affirm.

Plaintiffs, children of Fred Hampton by prior marriages, initiated proceedings in the probate court seeking an order requiring defendant, individually and as administratrix, to account for and pay to Hampton's estate the proceeds of a savings certificate

which was in his name at the time of his death. Defendant, as administratrix of her late husband's estate, had inventoried an amount representing one-half of the sum paid under the certificate. She claimed the remainder of the proceeds as "co-owner" of the certificate. The case was removed to the circuit court and in her pleadings defendant sought judgment for all the proceeds of the certificate.

The undisputed facts giving rise to this controversy are as follows:

1. Fred and his former wife, Grace, were joint owners of an $8,000 certificate of deposit issued by Poplar Bluff Loan and Building Association and both had signed a signature card.

2. Grace died.

3. Fred surrendered the Fred-Grace certificate and on August 10, 1973, certificate "A" in the sum of $8,000 was issued by the saving association in the name of Fred Hampton.

4. August 31, 1973, certificate "B" in the sum of $8,000 was issued by the association in the name of Fred H. Hampton.

5. Fred Hampton was the exclusive source of the monies for certificates "A" and "B".

6. November 12, 1973, during the marriage of Fred and Edna [1], the words "and Edna Hampton or either or survivor" were added to "A" after Fred's name at his direction.

7. At an unknown date, during the marriage of Fred and Edna, the words "and Edna Hampton or either or survivor" were added to "B" after Fred's name at his direction.

8. May 7, 1974, "A" and "B" were surrendered by Fred and certificate "C" in the face value of $16,000 was issued by the association in the name of Fred Hampton.

9. Signature cards for "A," "B," and "C" were prepared by the associa-

1. Colloquy of the parties' attorneys indicate Edna was Fred's fourth wife.

tion and sent to Fred but were never executed or returned.

10. Edna had knowledge of one of the two $8,000 certficates. She did not know they had been surrendered or that "C" had been issued to Fred.

11. Fred Hampton died sometime after "C" had been issued and "C" was found in his lockbox by defendant.

12. The inventory and appraisement of Fred's estate was dated July 22, 1974. It recited defendant had cashed certificate "C" but had charged herself, as administratrix, with only one-half the monies received and she claimed the remainder as her individual property. The value of Fred's estate, per the inventory filed, was $49,000 real estate and $10,269.57 personal property.

The trial judge found Fred Hampton was the owner of certificate "C" at the time of his death and entered judgment accordingly.

In the case of *In re Estate of LaGarce,* 487 S.W.2d 493 (Mo.banc 1972), the supreme court stated that prior constructions placed on Missouri's joint account statutes [§ 369.-150 (savings and loan associations) and § 362.470 (banks)] were erroneous and our statutes created a *"statutory joint tenancy* which should be given effect without consideration of the strict common-law requirements mentioned in the [previous] cases." 487 S.W.2d at 500.[2] (emphasis added)

The issue here presented, whether the depositor and statutory joint tenant may revoke a statutory account during his life-time, was squarely presented and ruled in *Carroll v. Hahn,* 498 S.W.2d 602 (Mo.App. 1973). In that case the St. Louis District of this court held that a stepfather who deposited funds in a joint account with his stepson had the power during his lifetime to revoke the account and appropriate and transfer those funds to a new account, thereby divesting the interest of the stepson.

In *Carroll,* as in this case, the appellant relied on *Feltz v. Pavlik,* 257 S.W.2d 214 (Mo.App.1953). In distinguishing *Feltz* the court said, 498 S.W.2d at 608: "In that case the funds from a joint account of a husband and wife as tenants by the entirety were held to retain their joint character after they had been removed by the husband, placed by his brother in a new account under his brother's name and ultimately in a joint account of the brother and his wife. The evidence in that case indicated that the funds in the original account represented the accumulation of the individual savings and earnings of both the plaintiff-wife and her deceased husband. Since plaintiff was shown to have made personal contributions to the purchase of the property, which when sold resulted in the joint account, that case, unlike the present, was a proper subject for tracing the joint funds and the imposition of a constructive trust thereon. *Furthermore, the husband fraudulently transferred the money to his brother and thus was a case involving fraud upon the marital rights of the wife.* See *Feltz* distinguished in *Staehle v. Mercantile Trust Co.,* 327 S.W.2d 220, 226 (Mo.1959)." (our emphasis)

---

2. *LaGarce* involved a transfer by a husband of saving certificates in the names of husband and wife with right of survivorship. On remand and trial the evidence showed husband had a $7,000 certificate reissued in his name alone. Thereafter, he had a third party's name added as a joint tenant. On appeal it was held the husband's transfer of ownership to the third party was fraudulent as to the surviving wife's marital rights because: (a) no consideration by the third party, (b) retention of certain control over the certificate by husband during his lifetime, (c) the amount of the transfer was disproportionate to the value of the husband's estate,

(d) the transfer was not made openly and with frank disclosure, (e) the transfer occurred while husband and wife were having marital difficulties and separated, and (f) the husband, during the separation, had placed his own assets and jointly held assets beyond the wife's control. *Matter of Estate of LaGarce,* 532 S.W.2d 511 (Mo.App.1976).

A similar result was reached in *Nelson v. Nelson,* 512 S.W.2d 455 (Mo.App.1974). Also see *In re Estate of Lowe,* 519 S.W.2d 373 (Mo. App.1975). In *Nelson* and *Lowe* the transfers were ruled gifts in fraud of marital rights in violation of § 474.150, RSMo 1969.

This is not a case involving fraud upon the marital rights of the wife, Edna. There are no allegations of such in the pleadings and no evidence thereof in the record. Edna's *marital rights* in Fred's property, including certificate "C," remain intact. As surviving spouse she will receive one-half of his entire estate [§ 474.010, RSMo 1969], exempt property [§ 474.250, RSMo 1969], and family allowance for one year [§ 474.-260, RSMo Supp. 1975].

"We do not deal here with the traditional common law joint tenancy relationship. Nor do we deal with tenancies by the entirety. Rather, we deal with a unique, specialized type of relationship—a joint savings account which is not governed by the traditional common law rules relating to joint tenancy." *Carroll v. Hahn*, supra, 498 S.W.2d at 606.

We think the *Carroll* ruling is sound and consistent with the recognition by our supreme court in *LaGarce* that a statutory joint account is what is sometimes referred to as a "poor man's will" and is subject to revocation by the depositor of the funds during his lifetime. *In Matter of Estate of Thompson*, 539 S.W.2d 650 (Mo.App.1976), our Kansas City brethren arrived at the same conclusion in holding that where the source of the joint account became incompetent, her guardian had the right to withdraw the funds from the account just as the ward had before becoming incompetent.

The judgment is affirmed.

All concur.