257 S.W.2d 214 (1953)
FELTZ
v.
PAVLIK et al.
No. 28608.
St. Louis Court of Appeals. Missouri.
April 21, 1953.
*215 Carl A. Enger and James J.
McMullen, St. Louis, for appellants.
Charles A. Neumann and William Kohn, St. Louis, for respondent.
HOUSER, Commissioner.
This is an action by Viola Pavlik to have a fund on deposit in the Gravois Bank of St. Louis County in the names of Frank and Clara Pavlik declared to be the property of plaintiff. Viola Pavlik sued Frank and Clara Pavlik, husband and wife, and the bank, alleging that she and her husband William Pavlik had a joint checking account in both their names at the Jefferson-Gravois Bank of St. Louis; that Frank drew out the balance of $3,900 in that account without her knowledge or consent, opened a new joint account in the name of Frank and William, and after that account had been checked down to $3,542.07, wrongfully placed $3,500 of those funds in a joint account in the names of Frank and Clara, all prior to the death of William and without the knowledge or consent of plaintiff, who, as survivor of William, is entitled to the proceeds of the joint account originally held in the names of herself and William. Tried to the court it was adjudged and decreed that the balance of $3,347.85 on deposit in the bank in the names of Frank and Clara rightfully and legally is the property of Viola Pavlik. The court directed defendants to turn the fund over to her. All three defendants appealed. Thereafter Viola Pavlik assigned the judgment to her sister Eleanora Feltz, respondent herein.
In 1945 William and Viola Pavlik were married. Shortly before the marriage they bought a farm for $5,600, taking title in the names of "William A. Pavlik and Viola Pavlik, his wife." Viola contributed $2,000 of her own money toward the down payment of $3,000. Further payments were made in installments from their joint savings. They both worked steadily, William earning $70 a week as a beer bottler, Viola earning $44 to $50 a week at a printing *216 firm. They lived frugally, denying themselves some of the necessities of life in order to increase their savings. In 1945 they established a joint account at Industrial Bank & Trust Company in the name of "Mrs. Viola Pavlik or William A. Pavlik (husband) either or the survivor" and made small additions thereto from their joint earnings more or less regularly through the years of their married life. In February, 1948 a joint savings account was opened by them at the Jefferson-Gravois Bank of St. Louis, in the names of "William A. Pavlik or Viola Pavlik, either or survivor" and from time to time they made small deposits therein. In September, 1949 both parties quit working on account of sickness. Before his sickness Viola at no time objected to her husband drawing any money out of the accounts. He had the same privileges she had. They did not consult one another about withdrawals. In November, 1949 they sold their farm, together with livestock and equipment which they had purchased out of their joint savings, for the sum of $10,500. On November 2, 1949 $5,000 of this sum was deposited in the joint savings account at the Jefferson-Gravois Bank of St. Louis. On the same day $5,500 was deposited in the joint Industrial Bank & Trust Company account. After they quit working, it was necessary to draw on the savings account at the Jefferson-Gravois Bank of St. Louis for living expenses and for the payment of doctor and hospital bills. Between November 4, 1949 and December 22, 1950 approximately ten withdrawals were made from this account, half of them by Viola and the other half by William, for these purposes. On December 11, 1950 William Pavlik went to live at the home of his brother Frank. Viola stayed at her mother's home. This arrangement was necessitated by their sickness, neither being able to care for the other, and there being no room for both at either the mother's or the brother's house. To avoid the necessity of visiting the bank to make withdrawals, and for the convenience of both of them, the parties on December 22, 1950 drew the balance of $4,100 from their joint savings account at the Jefferson-Gravois Bank of St. Louis and redeposited it there on the same day in a joint checking account in the names of "William A. Pavlik or Viola Pavlik," in form payable to "either or the survivor," under a depositor's agreement signed by both of them in which they agreed with each other and the bank that all sums deposited in said account "are and shall be the joint moneys or property of the undersigned, payable on the check of either or the survivor, and that the amount to the credit of said account on the death of either is and shall be the sole and absolute property of the survivor and payable on the check of such survivor" and that the bank "may pay all checks drawn against said account by either of the undersigned * * *." At 5 a. m. on January 8, 1951 William Pavlik was taken to a hospital in a critical condition. He was placed under oxygen. On the same day, without the knowledge or consent of Viola Pavlik, $3,900 was drawn out of the joint checking account by check dated January 8, 1951 payable to Frank W. Pavlik and signed by William Pavlik. The body of the check was filled out by Frank Pavlik. It was endorsed by Frank and deposited in a new checking account established that day in Frank's name. On January 15, 1951 William's name was added to Frank's account as depositor. On January 16, 1951 a check for $200 and on January 22 another check for $150 were drawn on this account. On February 16, 1951 the balance of $3,542.07 remaining in the joint checking account of Frank and William was drawn out by check in Frank's handwriting payable to himself and signed by him. This withdrawal was also accomplished without the knowledge or consent of Viola Pavlik. Three days later Frank cashed the bank check which was issued to him February 16 for $3,542.07 and deposited $3,400 thereof to the joint account of Frank Pavlik and Clara Pavlik, his wife. On February 23, 1951 William Pavlik died.
On January 18, 1951 William issued a check drawn on the checking account in payment of a hospital bill. That check was returned "account closed." It was shortly thereafter that Viola learned that the joint checking account at the Jefferson-Gravois *217 Bank of St. Louis had been exhausted. After she learned this fact she drew the then balance of $4,697 out of the joint account at Industrial Bank & Trust Company and placed it in a checking account in her own individual name, for fear that she would be left without funds.
At the trial appellant Frank Pavlik offered to prove that he was informed by his brother William, shortly prior to William's death, of the existence of the joint account in the Jefferson-Gravois Bank of St. Louis in the names of Viola and William A. Pavlik; that it was the intention and wish of William that the joint account be closed out and the balance of the funds therein be withdrawn and transferred to a new joint checking account in the same bank in the names of Frank and William; that William did not want any of the money to go to Viola; that William requested and demanded that Frank write out the check on the joint account of Viola and William for that purpose; and that pursuant to William's request this was done by Frank. The offer of proof was rejected by the trial court on the ground that it violated the dead man's statute.
It stands undisputed that Viola Pavlik did not consent to or authorize the act of William Pavlik in issuing a check to Frank Pavlik for the balance remaining in the account, knew nothing whatever about this transaction until some time after it occurred, and did not ratify the transaction.
In support of their assignment that the court erred in entering its decree for plaintiff, appellants say that the petition does not state a cause of action in equity; that this is an action at law; and that while plaintiff alleged that Frank drew the money out of the joint account of William and Viola she failed to prove it but on the contrary proved that William signed the check by which the withdrawal was effected.
Appellants cite no case and offer no sound reason why the petition does not state a cause of action in equity. We hold that a claim upon which relief could be granted is stated.
The point that there is a variance between the pleading and proof is ruled against appellants for the reason that the evidence was admitted without objection, the issue was tried by the consent of the parties, and now should be treated as if it had been raised in the pleadings. Section 509.500 RSMo 1949, V.A.M.S.; Schroeder v. Zykan, Mo.App., 255 S.W.2d 105; Scott v. Missouri Ins. Co., Mo.App., 246 S.W.2d 349, loc. cit. 354; Jankowski v. Delfert, 356 Mo. 184, 201 S.W.2d 331, loc. cit. 335.
On the merits, appellants assert that under the agreement between William, Viola and the bank the funds were subject to the order of either; that William had a perfect right to issue the check payable to the order of his brother; that when he did so prior to William's death the account was cleared, and plaintiff's right thereto terminated, thereby eliminating any right in her to claim as a survivor of William; that there was no allegation or proof of incompetence on the part of William or undue influence, duress or fraud exercised upon him; and that the funds were not held as tenants by the entirety. Appellants further point out that while William appropriated one joint account in the sum of $3,900 at one bank, plaintiff appropriated the other in the sum of $4,697.58, and the inference seems to be that this more than squared their accounts.
The principal question for decision is whether the act of William Pavlik in withdrawing all the moneys in the joint checking account by check payable to his brother without obtaining the prior consent of his wife Viola was effective to terminate the joint tenancy and the rights, including survivorship rights, of the wife and to vest sole title to the fund in the brother Frank Pavlik and his nominee. We see no escape from a negative answer to this question.
Section 362.470 RSMo 1949, V. A.M.S. provides as follows:
"When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the *218 survivor of them, such deposit thereupon and any additions thereto made by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them; and such payment and the receipt or acquittance of the one to whom such payment is made shall be a valid and sufficient release and discharge to said bank for all payments made on account of such deposit prior to the receipt by said bank of notice in writing signed by any one of such joint tenants not to pay such deposit in accordance with the terms thereof."
This section fixes the interests of joint depositors as that of joint tenants and a deposit agreement in form of the kind and character here in question fixes the ownership of the account in the persons therein named (William and Viola Pavlik) with attendant rights of survivorship. Commerce Trust Co. v. Watts, 360 Mo. 971, 231 S.W.2d 817. When husband and wife as joint depositors sign a form of agreement with the bank of the kind and character here in question they are presumed to hold the account as tenants by the entirety. Cullum v. Rice, 236 Mo.App. 1113, 162 S.W.2d 342; State Bank of Poplar Bluff v. Coleman, Mo.App., 240 S.W.2d 188. There is no evidence in the case at bar to overcome the presumption of tenancy by the entirety. On the contrary, the presumption is strengthened by the fact that the very source of the original deposit was a fund which resulted from the sale of a farm held by the parties as tenants by the entirety. Nusshold v. Kruschke, 176 Or. 697, 159 P.2d 819. Tracing it back further it appears that the farm itself was paid for, in substantial part, out of the savings and earnings of the wife, Viola Pavlik.
The essential elements of a joint tenancy are: (1) the tenants must have one and the same interest (unity of interest); (2) the interests must accrue by one and the same conveyance (unity of title); (3) the interests must commence at one and the same time (unity of time); and (4) the property must be held by one and the same undivided possession (unity of possession). 14 Am.Jur. § 7, p. 81. They hold per my et per tout or, in plain language, "by the half and by the whole." While either tenant of a joint bank account may, without the other's consent, withdraw all or part of the fund, 48 C.J.S., Joint Tenancy, § 17, p. 937, a joint owner may not assign the entire account, Schwartz v. Sandusky County Savings & Loan Co., 65 Ohio App. 437, 30 N.E.2d 556, so as to divest the other joint tenant of his right to the funds. 14 Am.Jur., § 84, p. 148; 48 C.J.S., Joint Tenancy, § 17, p. 936. In such case the joint tenancy is not destroyed, the proceeds retain their character as joint property wherever they may be traced, and a constructive trust may be impressed thereupon.
See also 41 C.J.S., Husband and Wife, § 35(2), p. 490.
Following the overwhelming weight of authority we rule that William Pavlik had no power to divest his wife, Viola, of her joint ownership of the bank account by issuing a check thereon to his brother Frank, without the consent of Viola. The funds retained their joint character when they were deposited in the account of Frank, and in the successive accounts in the joint names of Frank and William and Frank and Clara. The latter acquired no beneficial title through the attempted gift. They and the bank hold the funds for the assignee of the true owner Viola Pavlik, the latter of whom succeeded to the ownership of the moneys by right of survivorship on the death of her husband.
In Ambruster v. Ambruster, 326 Mo. 51, 31 S.W.2d 28, loc. cit. 37, 77 A.L.R. 782, our Supreme Court said:
"* * * logically, if the parties have a joint interest in the bank account, they ought to have a like interest in property in which the joint funds are investednothing further *219 appearing. * * * the joint form of the account, either or the survivor to draw, of itself alone raises a presumption of fact, or inference, that the joint interest of the depositors follows funds withdrawn by either and negatives the idea that such withdrawals were severed from the joint estate and appropriated by the drawer to his own use."
The New York rule as laid down in Moskowitz v. Marrow, 251 N.Y. 380, 167 N.E. 506, 66 A.L.R. 870, was approved in the Ambruster case. The New York courts hold that where one joint depositor withdraws all the money in the account and redeposits it to his own account without the consent of the other the cotenancy is not thereby terminated and the interest of each depositor remains as it was when the funds stood in their joint account. In O'Connor v. Dunnigan, 158 App.Div. 334, 143 N.Y.S. 373, affirmed memo. 213 N.Y. 676, 107 N.E. 1082, the bank deposit was in the name of "Mary Guilfoyle or Joseph Guilfoyle. Pay to either or the survivor of either." Four days before her death the wife Mary withdrew all of the funds in the account without the knowledge or consent of her husband Joseph and opened a new account in her own name. By her will which was drawn the next day she purported to dispose of the money to a third party. In a controversy between the husband and his deceased wife's executrix over the right to the funds the New York Supreme Court held that the withdrawal by Mary without the consent of Joseph "could not divest Joseph Guilfoyle of his joint ownership in the property. It would be preposterous to claim that an appropriation of personal property by one joint owner to his personal use could divest the interest of the other joint owner or could in any way be presumed to have been by the consent of his co-owner. In order to change the joint ownership which presumptively existed, defendant was required to show that the ownership of Joseph Guilfoyle has been voluntarily surrendered."
The rule is followed in California, Wheeland v. Rodgers, 20 Cal.2d 218, 124 P.2d 816; Lieber v. Rigby, 34 Cal.App.2d 582, 94 P.2d 49; Wallace v. Riley, 23 Cal. App.2d 669, 74 P.2d 800; In re Harris' Estate, 169 Cal. 725, 147 P. 967; Waters v. Nevis, 31 Cal.App. 511, 160 P. 1081, and is thus stated in Daniels v. Harney, 111 Cal. App.2d 400, 244 P.2d 773, loc. cit. 774:
"* * * where one joint tenant without consent withdraws the whole or part of the fund of a joint bank account during the life of both tenants the joint tenancy is not destroyed, the proceeds retain the joint tenancy character wherever they can be traced unless the character is changed by agreement of the parties and the deprived tenant can exercise his right of survivorship as to the entire fund which has retained the joint tenancy character."
The rule is adhered to in Oregon. In State v. Gralewski's Estate, 176 Or. 448, 159 P.2d 211, 161 A.L.R. 66, a father and son had a joint savings account in a bank payable to either or the survivor. While the father was in a hospital for the insane the son caused the funds to be withdrawn from the joint account and deposited in an account in his own name. This was held not to terminate the joint tenancy and the survivorship rights of the father, or to vest sole title in the fund in the son. The court said, 159 P.2d at page 214:
"* * * the withdrawal by one depositor, without the other's consent, of the entire deposit, and for the manifest purpose of defeating his codepositor's survivorship right, is a violation of the understanding between the parties, as evidenced by the deposit agreement, and an attempted invasion of such codepositor's title. It does not effect a severance of the joint tenancy, but, as the authorities upon which we rely hold, results only in a change in the form of the deposit, while its joint character and the rights therein of the respective parties remain unaltered. It follows that in the present case, upon the death of Kurt Gralewski, John Gralewski, as the survivor, succeeded to full ownership of the *220 moneys in the two deposits in question."
The ruling was reaffirmed in Nusshold v. Kruschke, supra, in which case John and Emma Nusshold, husband and wife, opened a joint savings account in a bank under an agreement to pay the sums deposited to either or the survivor. Later John made two withdrawals of money from the account and deposited them in a previously established joint savings account in the names of himself and his daughter Marie. The next day he killed himself. Within a few days the daughter Marie withdrew the entire balance in the joint account standing in the names of herself and father, whereupon Emma Nusshold sued Marie to impress a trust upon the moneys so withdrawn by John from the joint savings account of John and Emma. It was held that plaintiff was entitled to recover judgment against the defendant for the amount of the withdrawals from the account, the court saying, 159 P.2d at page 821:
"John Nusshold did not acquire title to the moneys by withdrawing them, and it was not within his power to make a gift of them to the defendant. They retained their joint character as the property of John and Emma Nusshold, with right of survivorship, after they were deposited in the Pacific First Federal joint account of John Nusshold and Marie Kruschke, and after Marie Kruschke withdrew them from the account. The defendant, therefore, acquired no beneficial title through the attempted gift, and is bound to make restitution to the true owner. Restatement, Restitution, 506, § 123. The plaintiff succeeded to the ownership of the moneys by right of survivorship on the death of her husband."
The Indiana courts have ruled in the same manner. In Clausen v. Warner, 118 Ind.App. 340, 78 N.E.2d 551, a bank deposit account was opened in the name of "Mr. or Mrs. Donald K. Warner and the survivor of them as joint tenants and not as tenants in common." The husband, without the knowledge of his wife, withdrew $5,500 from the joint account and delivered it to his father who in turn delivered it to his mother. Both father and mother knew that the funds were held jointly. Thereupon Mrs. Warner brought suit against the father and mother of her husband to recover the sum of $5,500. In reversing a judgment for defendants the court said, 78 N.E.2d at page 552:
"If they were joint owners he could not by withdrawing the money without her knowledge or consent divest her of her joint ownership. See O'Connor v. Dunnigan, 1913, 158 App.Div. 334, 143 N.Y.S. 373, affirmed in 213 N.Y. 676, 107 N.E. 1082. Joint tenants hold `by the half and by the whole.' They may dispose of their individual interests during their lives but if they fail to do so the entire goes to the survivor. 14 Am.Jur., §§ 6 to 14, pp. 79 to 87. But neither can dispose of the interest of the other. 14 Am.Jur., § 84, p. 148. In the instant case the decedent was without power to dispose of appellant's one-half interest in the funds on deposit. Since appellees received the money of appellant with full knowledge of all the facts and circumstances and knowing that decedent was without right to give it to them, it is elementary that they are liable for its return. [Citing cases.]"
The Pennsylvania Supreme Court holds that:
"Where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, but the money thus withdrawn is impressed with the entirety provision that it is the property of both, and any one dealing with such specific property as severalty, knowing it belongs to both, must submit to the consequences." Madden v. Gosztonyi Savings & Trust Co., 331 Pa. 476, 200 A. 624, loc. cit. 631, 117 A.L.R. 904.
The cases of Werle v. Werle, 332 Pa. 49, 1 A.2d 244, and Berhalter v. Berhalter, 315 Pa. 225, 173 A. 172, are to the same effect.
*221 The judgment of the circuit court should be affirmed, and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, affirmed.
BENNICK, P. J., and ANDERSON and HOLMAN, JJ., concur.