**BLUE VALLEY FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Respondent,**

**v.**

**Rufus BURRUS, an Individual and as Executor of the Estate of Mona Beets Miles, Deceased, Defendant-Appellant,**

**and**

**Sherman Miles, Defendant-Respondent.**

**No. WD 32619.**

Missouri Court of Appeals, Western District.

June 22, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 3, 1982.

W. Raleigh Gough, Independence, for defendant-appellant.

Elizabeth Ruth Sauer, Kansas City, for plaintiff-respondent Blue Valley.

Gene P. Graham, Independence, for defendant-respondent Sherman Miles.

Before CLARK, P. J., and MANFORD and KENNEDY, JJ.

CLARK, Presiding Judge.

This interpleader action, another segment of the multiple controversies over the estate of Mona Beets Miles, deceased, concerns claims to a joint savings account. The

account had been maintained for a number of years in the names of Mona Miles, Sherman Miles and Rufus Burrus as joint tenants payable to any of them or to the survivor. After Mona Miles' death, Sherman Miles and Rufus Burrus each claimed the account, Sherman contending he was the sole owner while Burrus claimed a one-half interest. Blue Valley, confronted with conflicting payment demands, and owed balances on two loans obtained by Sherman Miles with the account assigned as collateral, brought interpleader. Miles and Burrus responded by asserting their claims. After trial without a jury, the court directed Blue Valley to deduct from the account "the amount currently due" Blue Valley by Sherman Miles, deduct also an amount for attorney fees incurred by Blue Valley and pay the balance over to Sherman Miles. Burrus appeals.

The relationships of the parties and the history of their disputes are adequately described in previous opinions which have dealt with other aspects of the Miles estate. The interested reader is referred to those opinions.[1] Suffice it to say here that although Burrus serves as executor of the estate, he appears in this action individually, and the probate estate is not directly involved.

The deposit account in question is first recorded, in the evidence presented, by a signature card identifying Acct. 1–652861–4, hereafter referred to as the first account. The Blue Valley savings officer who testified reported that the first account was established in the name of Mona Miles alone on August 6, 1971 with a deposit of $28,000.00. On December 15, 1972, the names of Sherman L. Miles and Rufus B. Burrus were added to the account and the signatures of each appear on the joint account record card.

On December 31, 1974, Sherman Miles applied to Blue Valley for a transfer of the first account, the balance of which was then $28,708.97. A new account bearing identification as Acct. 1–170578–7 was opened in the names of Mona Groves Miles, Sherman L. Miles and Rufus B. Burrus, that account being hereafter referred to as the second account. The signature card for the second account bears the signatures of Mona Groves Miles and Sherman L. Miles but no signature of Rufus B. Burrus. Below the lines for signature, the card includes the typewritten legend, "Customers request Rufus Burrus not sign card."

Activity on the second account, after the initial deposit by transfer from the first account, included earnings additions by way of interest, a deposit of $6,336.00 on August 8, 1975 and three withdrawals between June 7, 1976 and April 18, 1977 totaling $7,300.00. Mona Miles died June 13, 1978 at which time the account balance with interest to March 31, 1978 amounted to $36,236.28. At the time of trial in August 1980, addition of interest credited to that date had increased the account balance to $42,896.63. That balance, however, was encumbered by a pledge of the account to Blue Valley as security for repayment of loans Sherman Miles had obtained.

The record is somewhat sparse as to the details of the loans and no evidence disclosed what amounts were actually due as of the date of trial. That circumstance is attributable to the fact that the note payment schedules included precomputed interest to the maturity dates, neither of which had been reached when the case was tried. Moreover, no explanation was offered as to why Miles arranged for loans against the account at a higher rate of interest than was earned by the deposit in preference to merely withdrawing the sums.

Whatever may have been the reasons prompting the transactions, the record establishes that on June 9, 1977, Sherman

1. *In re Estate of Miles*, 612 S.W.2d 64 (Mo.App. 1981); *Blue Valley Federal Savings and Loan Association v. Burrus*, 617 S.W.2d 111 (Mo. App.1981); *In re Estate of Miles*, 632 S.W.2d 323 (Mo.App.1982).

Miles executed his individual promissory note payable to the order of Blue Valley in the face amount of $15,000.00 plus interest repayable in monthly installments of $373.51 during a term of four years for a total sum of $17,917.20. On February 10, 1978, Miles executed a second note with similar terms in the face amount of $16,-000.00 plus interest repayable in monthly installments of $398.16 during a term of four years for a total sum of $19,111.68. According to the Blue Valley loan officer, the balances due on the notes at the time of trial, if scheduled payments were made to maturity, were $11,198.34 and $15,130.08 respectively. The actual amounts then due would be substantially reduced by interest rebates, the amounts of which were not given.

From the loan amounts originally posted and the balances stated at the time of trial, it is apparent that installment repayments were made. The loan officer testified that the last payment was made December 7, 1978, quite apparently by Sherman Miles because Mona had died some six months earlier. Although the principal balances due as of the date of trial cannot be calculated without recourse to a formula to abate unearned interest (the rule of 78's), simple arithmetic yields the result that repayments had been made on the first loan to the amount of $6,718.86 and, on the second, $3,981.60.

On July 14, 1978, Rufus Burrus sent a letter to Blue Valley listing seven accounts, including the second account above, on which Mona Miles' name appeared. Burrus's letter sent in his capacity as executor of Mona's estate and as a joint owner instructed Blue Valley not to distribute any sums from the accounts pending ascertainment of tax liabilities and contested ownership. Whether Sherman Miles received notice of Burrus's request to Blue Valley at the time does not appear, but loan repayments were made thereafter until December 1978. In March of 1979, Miles requested that Blue Valley satisfy his loan indebtedness from the second account. That request was refused by reason of the notice from Burrus that some contest pended.

The record here does not reflect and the parties have not indicated whether Blue Valley has taken recourse to the second account to satisfy the Sherman Miles notes or whether the interest due on those notes has additionally accrued past the respective maturity dates of June 9, 1981 and February 10, 1982. In any event, default in payments on the notes has resulted in continued accumulation of interest charges at 9 percent, a rate in excess of earnings on the savings deposit. For purposes of this appeal, the second account and the Miles notes will be considered in the status they occupied at the date of trial. The second account was intact with a balance of $42,-896.63, but subject to a potential reduction in an amount sufficient to satisfy the notes should Sherman Miles fail or refuse to complete the payment schedule.

By its judgment, the trial court held that Burrus had no interest in the second account. Blue Valley was ordered to deduct from the account an amount sufficient to pay the two Sherman Miles notes, the amount not being stated, to deduct also the amount of $1,918.75 allowed as attorney fees for services in bringing the interpleader and to pay over to Sherman Miles the balance remaining.

Before reviewing the points Burrus presents on this appeal, a summary of the basic contest over the account will serve to place the discussion which follows in the appropriate perspective. The dispute between Miles and Burrus is twofold. The first question to be answered is whether Burrus acquired a joint ownership interest in the account by reason of the creation and maintenance of the account in his name together with the names of Mona and Sherman Miles. If that be answered in the affirmative, the subordinate question is whether Burrus's interest survived the death of Mona Miles. If it be determined that Burrus was a joint owner of the

account with Sherman after Mona's death, the second issue is to ascertain the value of the respective interests of Burrus and Miles so that they may be set apart in partition as the pleadings of each request. Necessarily impacting upon that decision is the effect to be given the encumbrance created by Miles when the account was pledged to secure repayment of his notes.

It is important to observe that no issue is presented here concerning the entitlement of Sherman Miles to withdraw funds from the savings account before Burrus placed Blue Valley on notice that a contest over ownership of the account pended. The pledge of the account by Miles was not equivalent to a withdrawal of funds because the loans were documented as such and were treated by Miles as loans, a fact confirmed by the record showing substantial repayments. Thus, in a division of the account between Miles and Burrus, Miles is entitled to no preference merely because a preexisting debt obligates Miles to repay loans. Had Miles withdrawn sums from the account after Mona's death, a different fact situation would arise. We refrain, however, from expressing any opinion as to the effect such withdrawals would have had in an accounting between Miles and Burrus.

Turning now to the points Burrus presents on this appeal, he first contends the trial court erred when it received over his objection and considered evidence of the intent of Mona Miles when Burrus's name was included on the second account as a joint owner. Burrus refers to § 369.174 [2] as controlling in determination of ownership in a joint savings account maintained in the names of two or more persons payable to any of them or to the survivor. Some review of the evidence and the findings made by the trial court is necessary to discussion of the point.

Over objection by Burrus, Sherman Miles was permitted to testify that when the second account was opened, he and his wife had deposits with Blue Valley in excess of

$100,000.00; that federal deposit insurance was limited to $40,000.00 per account name and by adding a third name, that of Burrus, the insurance was sufficient to cover the various Miles accounts; that neither he nor his wife, to his knowledge, had any intention to invest Burrus with any ownership in the second account, the addition of Burrus's name being merely to "get another $40,-000.00 insurance." In its findings, the trial court adopted the foregoing as an accurate explanation of why Burrus was named as a joint owner of the account, concluding there was no intent by either Miles to vest any interest in the account in Burrus. This, coupled with the facts that Burrus made no contribution to the account and did not have possession of the pass book, persuaded the trial court that Burrus was entitled to no part of the fund which was ordered paid over to Miles after deduction of the loan balances and attorney fees allowed Blue Valley. The trial court was in error in so holding.

Section 369.174; in relevant part, states: "369.174. Joint tenants' accounts, how handled

1. When a savings account is opened or maintained in an association in the names of two or more persons, whether minor or adults, as joint tenants or in form to be paid to any of them or the survivors of them and whether or not the names are stated in the conjunctive or the disjunctive or otherwise, the savings account and all additions thereto shall be the property of such persons as joint tenants. The moneys in the account and all earnings on the account may be paid to any one of such persons during his lifetime or to any one of the survivors of them after the death of any one or more of them. The opening or maintenance of the account in such form, in the absence of fraud or undue influence, shall be conclusive evidence in any action or proceeding to which either the association or any survivor is a party of the intention of all

2. All references are to RSMo 1978 except as otherwise shown.

the parties to the account to vest title to the account and the additions and earnings thereto in the survivor."

■ While the concept may at one time have been that creation of a joint account established only a rebuttable presumption of ownership in those named on the account, that concept was rejected by *In re Estate of La Garce*, 487 S.W.2d 493 (Mo. banc 1972). The statute then in force, § 369.150, RSMo 1969, was held by *La Garce* to provide for a statutory form of joint tenancy and when there is compliance with the statute as to the form of the account, the effect of joint tenancy with rights of survivorship may not be avoided except upon such conditions as the statute may allow. There is no burden on a claimant/joint owner to prove intent or to disprove a contrary purpose by other joint owners in the creation of the account. *Estate of Sheets v. Sheets*, 558 S.W.2d 291, 294 (Mo.App.1977).

Amendment of the statute to its present form occurred subsequent to the opinion in *La Garce*, but the changes have reinforced the operative effect of a joint account to create ownership interests in the persons named. The presumption of joint tenancy is now conclusive, subject only to rebuttal on proof of fraud or undue influence. The concept of joint ownership stemming from the manner in which the joint account is created, as held in *La Garce*, has been reaffirmed under the language of § 369.174. *Pollock v. Brown*, 569 S.W.2d 724, 731 (Mo. banc 1978).

■ No allegation was made and no proof was offered in the present case that inclusion of Burrus as a joint owner of the account, either the first or the second, was the product of fraud or undue influence. In fact, it was claimed by Miles that Burrus

knew nothing about the transfer from the first account to the second. The trial court erred when it received and considered evidence as to the intent of Mona and Sherman Miles in establishing the second account. The undisputed fact that the account was in the joint names of Mona, Sherman and Burrus in a form to be paid any of them or the survivor rendered the account the property of all three as joint tenants.[3] Upon the death of Mona, Sherman Miles and Burrus continued as joint owners with the account balance payable to either of them or to the survivor. The intent of Mona Miles or Sherman Miles when the second account was established, the circumstances of added federal deposit insurance and other facts on which the trial court relied were irrelevant. The finding that Sherman Miles became the owner of the account on Mona's death was in error.

In his second and third points, considered conjunctively, Burrus contends the trial court erred when it ordered repayment of the Miles notes from the deposit in the second account without providing restitution to Burrus for the amount such repayment diminished his interest in the joint account. While the entitlement of Blue Valley to look to the account for satisfaction of the debt was and is uncontested, Burrus argues that between him and Miles, each has an equal interest in the account and Miles owes Burrus exoneration to the extent Miles' debt invades more than one-half of the account.

By his responsive pleading to the interpleader action, Burrus sought declaration of his ownership interest in the account to the extent of one-half free and clear of any debt or withdrawal order made by Sherman Miles. The pleading by Miles claimed the entire account less the note indebtedness. The pleadings thus posed the issue of joint

3. No evidence was offered as to the operative effect of the absence of Burrus's signature on the second account card. His identity was not in question and his signature was available from the record of the first account. This feature of the case is, however, immaterial because the statute is in the disjunctive—joint ownership results when the account is opened or maintained in the names of two or more persons *or* is payable to any of them or the survivor.

ownership, and division of the account balance between the joint owners according to their respective interests. Having erroneously determined that the account was not jointly held between Miles and Burrus, the trial court did not reach the issue of how the account should be divided. As a joint owner, Burrus is entitled to seek division of the account by partition. Section 528.620. We proceed to adjudicate this aspect of the case as to the question of law presented.

Several facts bearing on the issue of what respective interests in the second account are owned by Miles and Burrus bear restatement. First, the reduction in the account balance to satisfy the Miles notes to Blue Valley is, although predictable, a contingent future event depending on the failure of Miles to pay the notes and the election by Blue Valley to seek satisfaction from the savings account and not by direct recourse against Miles. As of the times relevant to this action, election had not been made on those options and the account balance, undiminished, remained intact. Second, the source of the funds in the second account was directly traced to the former account represented by a deposit of the separate property of Mona Miles. Neither Sherman Miles nor Rufus Burrus made or claim to have made any contribution to the account. Both succeeded to their joint ownership solely by reason of having been named as joint owners with Mona and having survived her death.

Turning now to the question of partitioning the joint account between Burrus and Miles, it has been Miles' contention that the entire account should be set over to him because it was not Mona's intent, or his, that Burrus acquire any interest in the account merely by the addition of Burrus's name as one of the joint owners. At most, Miles argues that Burrus would acquire an interest only after Miles' death, and that interest could be extinguished by Miles through the expedient of closing the account. In effect, Miles suggests that Burrus holds only a contingent interest dependent upon his surviving both Mona and Sherman Miles, and then only to the extent that the balance in the account has not earlier been withdrawn.

■ The contention of Miles as to the respective interests of owners in a joint savings account payable to any of them or to the survivor is contrary to the relationship of the statutory joint tenancy defined by § 369.174. As noted above, the maintenance of a savings account in the statutory form is conclusive evidence, absent proof of fraud or undue influence, that the account is the property of the joint tenants and that title passes to the survivor. That relationship cannot be altered by proof that one or more of the joint tenants intended otherwise. Quite obviously, the purpose of the statute would be frustrated if stated joint account ownership of record were subject to divestiture upon proof of some different intent by one of the parties. Irrespective of what may have been the intent of Mona Miles or Sherman, Burrus is a joint owner of the account, the only question being what are the respective shares of the two in the deposit balance.

■ The parties have cited no Missouri authority and independent research has disclosed none defining the proportionate ownership interests of joint tenants in an account to which neither has made any contribution. The law, however, appears to be well settled. Although disproportionate contributions to the fund by one joint owner may be shown to establish a different interest, the interests of joint tenants are presumed to be equal. 48A C.J.S. *Joint Tenancy* § 23 (1981). The same presumption was indulged in *Walnut Valley State Bank v. Stovall*, 223 Kan. 459, 574 P.2d 1382 (1978) where a creditor of the wife had levied execution on the joint bank account of the wife and husband. The court stated:

"We believe this presumption of equal ownership should prevail in the absence of proof of ownership in some other proportion. Anyone attacking equal ownership should assume the burden of proof."

In *Vetter v. Hampton*, 54 Ohio St.2d 227, 375 N.E.2d 804 (1978), the contest was between the estate of the deceased and her sister over a joint survivorship savings account. The balance in the account had been withdrawn by the sister and the estate claimed the funds had originated solely from the property of the deceased. The court held the joint ownership form of the account to control and further stated:

"As noted earlier, the creation of a joint and survivorship bank account raises a rebuttable presumption that the co-owners of the account share equally in the ownership of the funds on deposit. Thus ' * * * the party seeking to uphold the joint and survivorship contract * * * is benefited by a presumption that both parties to the contract are rebuttably presumed to share equally in the res.' "

▇ In the present case, the record of the Blue Valley accounts appears to establish, without question, that Mona Miles contributed the funds from which the account originated. Even were that not to be the case, however, the presumption of equal ownership will prevail as to the joint tenants with the burden on the party claiming otherwise to supply proof that a different proportion should apply. Sherman Miles presented no such proof. We are therefore obligated to hold that the joint account is, for purposes of partition, equally owned by Miles and Burrus.

A more vexing question arises in determining to what extent, if any, Burrus's share of the account is to be reduced by the potential setoff which Blue Valley may assert to satisfy the Miles notes. As the facts earlier recited indicate, a one-half share in the account as of the date of trial equaled $21,448.31 while the loan indebtedness amounted to $26,328.42, less unearned interest. Subsequently, of course, the full debt has matured with additional interest computed at a greater rate than the amount earned on the savings deposit. It may therefore be safely assumed that more than one-half of the account will be required to pay the notes. Burrus contends that he is entitled to his full share and that Miles is obligated to him for whatever amount the satisfaction of Miles' notes reduces that share below one-half of the account balance as it stands before the setoff. Miles makes no opposing contention because he does not concede any interest of Burrus in the account.

As was noted earlier in defining the issues this case presents, the encumbrance of the account was not the exercise by Miles of the privilege of withdrawal nor did the loans bear any indication that they were intended to be the equivalent of withdrawals. The promissory notes, signed by Sherman Miles alone at a time when Mona was still alive, evidence conventional loan transactions. Conformity to the repayment schedules for a significant time, even after Mona's death, confirm the character of the advances as loans. While Blue Valley occupies the dual position of payee on the notes and depository of the savings account, this identity is irrelevant to an analysis of the respective positions of Miles and Burrus. The same principles would apply were Miles to have negotiated his loans elsewhere and yet pledged the same account as collateral.

At all relevant times, Sherman Miles has had the choice of paying the loan installments or permitting the notes to go into default with the predictable consequence that Blue Valley will satisfy Miles' debt from his joint account with Burrus. So long as the loans did not exceed one-half of the account, a condition which probably existed in 1978, Burrus's interest was not affected. At the time of trial and thereafter, however, the disparity between the rates of interest on the notes and the amount earned on the account have encroached on Burrus's share of the account and would eventually exhaust it. The question is whether Miles may effectively appropriate Burrus's share of the account by having the account, to the extent of more than one-half, applied to payment of Miles' individual debt.

Understandably, no factually similar case has been discovered. Some general rules, however, may be cited and applied. A case most frequently mentioned in disputes over funds withdrawn from a joint account is *Feltz v. Pavlik*, 257 S.W.2d 214 (Mo.App. 1953). There, husband and wife Pavlik had accumulated a deposit account through their joint efforts. Without his wife's consent, the husband withdrew the balance and placed it in an account with his brother who then transferred the account to his own and his wife's name. The court held that one joint tenant cannot deprive the other of his interest in jointly owned property by his appropriation of it, and that the wife's interest as a co-owner followed the fund. The rule was cited with approval in *Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 396 S.W.2d 570, 576 (Mo.banc 1965).

In *Allen v. Kelso*, 266 S.W.2d 696 (Mo. 1954), which also cites *Feltz*, the husband acted to set aside the transfer by his wife of funds in a joint checking account to her relatives. Because the husband was found not to have mental capacity to agree to the transfer, the withdrawal by the wife amounted to the appropriation which *Feltz* had considered. The court in *Allen* held the rule to be that the joint form of the account, either or the survivor to draw, of itself alone raises a presumption of fact that the joint interest of the depositors follows funds withdrawn by either and negatives the idea that such withdrawals were severed from the joint estate and appropriated by the drawer to his own use.

In *Carroll v. Hahn*, 498 S.W.2d 602 (Mo. App.1973), a joint account was created by funds entirely contributed from one of the joint tenants. The court distinguishes that situation from the jointly accumulated account funds in *Feltz* and holds that the joint owner who supplied the funds may terminate the interest of the noncontributing joint owner without responsibility. The court noted that in the *Feltz*-type situation there is a proper subject for tracing the joint funds and imposing a constructive trust.

The analogy between cases in which both joint account owners have contributed to create the account and the facts of the present case in which neither has contributed is compelling. Miles may no more justify application of Burrus's share in the account to pay Miles' notes than he could demonstrate entitlement to withdraw the full balance, without accountability to Burrus. Were such not the rule, the statutory joint tenancy which § 369.174 provides would be rendered meaningless. We therefore conclude that in division of the joint account, Burrus is entitled to one-half before setoff by Blue Valley of the note indebtedness due from Sherman Miles.

The contingent circumstances of this case present some difficulty in the entry of a final judgment. The trial court was in error when by its judgment it attempted to order disposition of the account without first determining the amount Blue Valley was entitled to apply to the Miles debt. Moreover, there is no obligation on Blue Valley to follow that course, although transparently preferential, and it is improper to order the setoff.

To resolve the uncertainties, it will be necessary to remand the case in order that the trial court may offer Blue Valley the opportunity to avail itself of recourse to the account to liquidate the Miles notes, if it has not already done so. An accounting must then be required to determine the current value of the account both before and after setoff of the Blue Valley debt. Judgment in favor of Blue Valley as to the setoff is to be entered. To the extent that the account balance remaining after the setoff does not exceed one-half of the account before setoff less one-half of the attorney fees allowed Blue Valley for the interpleader action, judgment is to be entered declaring Burrus the owner of that portion of the account. Any remaining sum in the account is awarded to Sherman Miles.

If the accounting rendered by Blue Valley discloses the sum in the account remaining after setoff of the Miles note balances to be less than one-half of the account immediately before setoff but after deduction of attorney fees allowed Blue Valley in this action, judgment is to be entered in favor of Burrus and against Sherman Miles for such difference.

The judgment awarding Blue Valley Federal Savings and Loan Association $1918.75 attorney fees is affirmed. In all other respects, the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

All concur.